# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER M. KING, | : | |
| Plaintiff, | : | |
| | : | 3:12-CV-491 |
| v. | : | |
| TOBYHANNA ARMY DEPOT and LEON PANETTA, SECRETARY OF DEFENSE | : | (JUDGE MANNION) |
| | : | |
| Defendants, | : | |

## MEMORANDUM

Pending before the court is the report and recommendation, (Doc. No. 30), of Judge Thomas Blewitt, recommending the dismissal of plaintiff's complaint, (Doc. No. 1), in its entirety for failure to exhaust his administrative remedies under the Civil Servant Reform Act (CSRA) and Veterans Employment Opportunities Act (VEOA). Because the court agrees that plaintiff failed to exhaust his administrative remedies and, even if he had exhausted his remedies, failed to file suit with the Federal Circuit, the court will **ADOPT** the report and recommendation **IN ITS ENTIRETY** and **DISMISS** plaintiff's complaint **WITH PREJUDICE**.

## BACKGROUND

This case arises out of a labor dispute in which plaintiff alleges that defendants denied him veterans preferences, a fair opportunity to compete for federal employment, and seniority in applying for jobs. He also claims that they breached his employment contract and harassed him for filing

employment grievances and asserting his veterans preferences. (Doc. No. 1, at 6.) In December 2007, plaintiff was hired at Tobyhanna Army Depot as a part-time WG-09 employee on second shift. (Doc. No. 1, at 2.) In November 2008, he was placed on a federal hiring list for a permanent WG-09 position but, despite his excellent qualifications and eligibility for veterans preferences, he was not selected for the job. (Doc. No. 1, at 2.) Plaintiff was placed on the hiring list for another permanent position in 2009, but was again denied the job. (Doc. No. 1, at 2.) Shortly after the alleged second incident, a 15-6 investigation was conducted at Tobyhanna to determine whether the facility personnel had engaged in unfair hiring practices. (Doc. No. 1, at 2.) One of plaintiff's superiors was removed from his position but nothing else was done to remedy the alleged employment violations of which plaintiff complains. (Doc. No. 1, at 2.)

In 2010, plaintiff was again placed on a federal hiring list for a WG-09 position but he was not offered the position, again despite his qualifications and veterans preferences. (Doc. No. 1, at 3.) Around this time, Tobyhanna management decided to lay off all term employees. (Doc. No. 1, at 3.) Plaintiff was scheduled to be terminated in January of 2011, but this date was later extended until September 2011. (Doc. No. 1, at 3.)

In June of 2011, plaintiff was, for the fourth time, placed on a federal hiring list for a permanent WG-07 position. (Doc. No. 1, at 3.) A month later,

a representative from defendant Tobyhanna contacted plaintiff to verify his entitlement to veterans preferences. (Doc. No. 1, at 3.) Plaintiff claims that he was uncertain as to why he was being contacted by a representative because he had already gotten the assurance of the Army Inspector General that he was entitled to veterans preferences and that he would have no further trouble from his employer. (Doc. No. 1, at 3.) Despite this assurance, plaintiff was moved from first shift to second shift shortly thereafter. (Doc. No. 1, at 3.) Plaintiff informed his supervisor on August 1 that he would like to speak with the next person in the chain of command because he believed his seniority rights were being violated. (Doc. No. 1, at 3.)

On August 9, plaintiff again spoke with his supervisor about speaking with a superior, and his supervisor informed him that there had been a misunderstanding. (Doc. No. 1, at 3.) The supervisor had believed he wanted his case forwarded to the Civilian Personnel Advisory Center (CPAC), which he had already done. (Doc. No. 1, at 3.) The supervisor gave him a contact number at CPAC and scheduled a meeting with branch chief Mike Romanchek. (Doc. No. 1, at 3.)

On August 17, 2011, plaintiff met with Mike Romanchek, who allegedly informed him that it was unfair to place plaintiff on third shift because of his seniority. (Doc. No. 1, at 3.) He also stated that unfair hiring practices had occurred at Tobyhanna but informed plaintiff that his grievance was with

CPAC, not management. (Doc. No. 1, at 3.) Plaintiff asked to remain on first shift until the problem was resolved, but Mr. Romanchek denied the request. (Doc. No. 1, at 3-4.) Plaintiff subsequently asked to have the issue elevated to the next person in the chain of command. (Doc. No. 1, at 4.)

On August 22, plaintiff met with Deputy Director Robert Marmo and Mike Romanchek. (Doc. No. 1, at 4.) He informed Mr. Marmo that it was unfair for him to be placed on third shift and that unfair hiring practices had occurred. (Doc. No. 1, at 4.) He told Mr. Marmo that they could have avoided this problem if Tobyhanna personnel had followed the law in the first place and given him the position the first time he applied because he was at the top of the list. (Doc. No. 1, at 4.) In response, Mr. Marmo told plaintiff that there were no numerical values assigned to the hiring list and denied his request to remain on first shift. (Doc. No. 1, at 4.) Several days later, plaintiff received an email from the human resources coordinator stating that he was number six on the federal hiring list. (Doc. No. 1, at 4.) Plaintiff forwarded this email to Mr. Marmo as proof of the numerical hiring system and asked to speak to the next person in the chain of command. (Doc. No. 1, at 4.)

On August 26, 2011, plaintiff met with Terrance Hora, Director of the SIS. (Doc. No. 1, at 4.) Mr. Hora informed plaintiff that it was unfair for him to be moved to third shift and that unfair hiring practices had occurred at Tobyhanna. (Doc. No. 1, at 4.) Nonetheless, he denied plaintiff's request for

4

transfer to first shift and stated that he had "no intention of rectifying the issue." (Doc. No. 1, at 4.) He also showed plaintiff the new hiring policy, which required all new employees to work third shift, and explained that, because plaintiff is a new employee, his seniority had no bearing on what shift they assigned him. (Doc. No. 1, at 4.) Plaintiff claims that this internal policy was applied inconsistently because other new employees remained on first shift at the time plaintiff was moved to third shift. (Doc. No. 1, at 4.) He also claims that Mr. Hora has since resigned from his position because he was suspected of complicity in a drug ring operating at Tobyhanna Army Depot. (Doc. No. 1, at 4.)

Plaintiff claims that he has been harassed by his supervisors in retaliation for complaining about the benefits to which he was entitled. (Doc. No. 1, at 4.) On one occasion, plaintiff claims that his supervisor laughed at him for having a temporary work restriction on the amount of weight he could be required to lift. (Doc. No. 1, at 5.) Plaintiff also claims that his supervisors have given him negative work evaluations despite the fact that he has had an exemplary work history and frequently receives praise from his work leader. (Doc. No. 1, at 5.) Finally, he claims that his supervisors have retained him on third shift, threatened him with termination, and ordered him to work above his pay grade. (Doc. No. 1, at 5.)

Plaintiff alleges that he has received no response from CPAC or any

5

other representative of the Tobyhanna Army Depot concerning any of his complaints. (Doc. No. 1, at 5.) He has contacted the EEOC, the Office of the Inspector General, the Department of Labor, Tobyhanna Army Depot Management, CPAC, and the Secretary of Defense about his grievances. (Doc. No. 1, at 5.) Therefore, he sought relief in the U.S. District Court for the Middle District of Pennsylvania. (Doc. No. 1, at 5.)

Plaintiff filed a complaint on March 19, 2012, alleging claims pursuant to various provisions of the CSRA and VEOA, including 5 U.S.C. §2108, 5 U.S.C. §3318(a) and (b), and 5 U.S.C. §2301. More specifically, he alleges that defendants denied him veterans preferences under the VEOA, a fair opportunity to compete for federal employment, and seniority rights at Tobyhanna Army Depot. (Doc. No. 1, at 6.) He also claims that the defendants harassed him, breached his employment contract, and denied him education benefits and advancement opportunities. (Doc. No. 1, at 6-7.) In response, defendants filed a motion to dismiss or, in the alternative, for summary judgment on May 25, 2012, arguing that plaintiff failed to exhaust his administrative remedies under the CSRA and VEOA. (Doc. No. 12.) Because the court agrees that plaintiff failed to exhaust his administrative remedies and because the Federal Circuit is the only court with appellate jurisdiction, the court will **GRANT** the motion to dismiss.

## DISCUSSION

As an initial matter, plaintiff argues that Judge Blewitt mischaracterized his complaint as bringing claims under the VEOA and CSRA as opposed to the Fifth Amendment. (Doc. No. 31, at 2-3.) Plaintiff states, "The inclusion of the laws 5 USC §2108, 5 USC §3318, AND 5 USC §2301 in the Plaintiff's complaint, (doc. 1), is not the legal basis on which the Plaintiff has based his standing in this court." (Doc. No. 31, at 2.) Instead, plaintiff claims that he is suing because defendants denied him "access [to] the redress procedures of these laws in a timely and effective manner which violated the Plaintiff's rights under the Constitution." (Doc. No. 31, at 2.) Essentially, plaintiff argues that he is suing for constitutional violations, not for violations of the VEOA and CSRA.

A meticulous review of plaintiff's complaint undermines plaintiff's claim that he did not intend to sue under the VEOA and CSRA. (Doc. No. 1.) Page one of the complaint states, "[t]his is a claim arising under including, but not limited to federal laws 5 USC §2108, 5 USC §3318(a), (b), and 5 U.S.C. §2301." (Doc. No. 1, at 1-2.) Section 2108 was enacted as a part of the VEOA and defines what a veteran is for purposes of veteran preferences under the act. 28 U.S.C. §2108. Plaintiff repeatedly refers to his right to veteran preferences throughout his complaint, indicating that the VEOA constitutes the basis for his claims. (Doc. No. 1, at 2, 3, 6.) Furthermore, §2301 is part of

the CSRA that is titled "Merit System Principles" and governs various aspects of federal agency hiring. 5 U.S.C. §2301.

It is true, as plaintiff indicates, that he did mention a constitutional claim in the third count of his complaint, (Doc. No. 1.); however, even if the complaint could be construed as alleging constitutional claims, the CSRA would preclude them because they arise out of federal employment. Ruddy v. U.S., 2012 WL 2924008, *6 (M.D.Pa. 2012). As the Third Circuit has stated, "the CSRA affords the exclusive remedy for damage claims of federal employees seeking redress for alleged constitutional violations arising out of the employment relationship." Sarullo v. U.S. Postal Service, 352 F.3d 789, 795 (2003). Judge Blewitt concluded that plaintiff's claims arise out of his employment relationship, and this court agrees. Plaintiff seeks redress for denial of seniority and veteran preferences, denial of a fair opportunity to compete for federal employment, and breach of employment contract and harassment. (Doc. No. 1, at 6-7.) All of these claims directly concern his employment at Tobyhanna Army Depot, a federal facility, so they certainly arise out of his employment relationship. In light of these considerations, the court agrees with Judge Blewitt that plaintiff's complaint only asserts claims pursuant to the CSRA and VEOA.

Nonetheless, plaintiff claims that defendants violated his constitutional

rights by denying him "access [to] the redress procedures of these laws[1] in a timely and effective manner." (Doc. No. 31, at 2.) Plaintiff appears to argue that it was his denial of access to the law, not defendants' employment violations that constituted a constitutional violation. There are no allegations in the complaint, however, that plaintiff was denied access to the law. In fact, plaintiff's affidavits indicate that he failed to follow the procedures set forth by Congress and the Department of Labor for filing his employment grievances. (Doc. No. 30, at 21-29.) Under the VEOA, a party must file a complaint with the DOL Veterans' Employment and Training Service (DOL VETS) within sixty days of the alleged violation. 5 U.S.C. §3330a(d)(1); 5 C.F.R. §1208.21; Graf v. Department of Labor, 111 M.S.R.P. 444, 449 (2009); Burroughs v. Dept. of the Army, 116 M.S.R.P. 292, 295 (2009) (DOL VETS is the office designated to receive VEOA complaints). Here, plaintiff filed his VEOA claim with the Office of Special Counsel, contacted the Office of Inspector General for the Department of the Army, and subsequently filed a complaint with the DOL Civil Rights Center. (Doc. No. 30, at 22-23.) Both the Office of Special Counsel and the Civil Rights Center informed plaintiff that he must file his complaint with the DOL VETS, but plaintiff failed to comply with their advice. (Doc. No. 30, at 22-23.) Instead, he filed a complaint with the U.S. District

---

[1] Plaintiff is referring to 5 U.S.C. §2108, 5 U.S.C. §3318, and 5 U.S.C. §2301. (Doc. No. 31, at 2.)

9

Court for the Middle District of Pennsylvania. (Doc. No. 1.) Even if plaintiff had exhausted his administrative remedies, the Middle District would not have jurisdiction because Congress vested the Federal Circuit with exclusive jurisdiction over VEOA claims. 28 U.S.C. §1295(a)(9).

Plaintiff also failed to follow the administrative procedures required to file his other, non-veteran claims. The Civil Service Reform Act of 1978 requires a complainant to notify the Office of Special Counsel (OSC) of the MSPB of the complaint and wait for an investigation to be conducted before appealing to the board. 5 U.S.C. §1214(a)(3). The MSPB must then hear the case before it can be appealed to the Federal Circuit, which has exclusive jurisdiction. 5 U.S.C. §7703(b)(1)(A). Here, plaintiff contacted the OSC regarding his case but, instead of appealing to the MSPB and then the Federal Circuit, filed suit in the Middle District of Pennsylvania. He therefore skipped a stage of the appeals process and ultimately filed with the wrong federal court. In light of these considerations, plaintiff is incorrect that "it was the inability to access the redress procedures of these laws in a timely and effective manner which violated the Plaintiff's rights under the Constitution." (Doc. No. 31, at 2.) It was his own failure to exhaust the remedies provided to him which necessitates dismissal of his complaint.

Plaintiff further presses his point by arguing that his subsequent court filings clarify that he was seeking constitutional remedies in his complaint.

(Doc. No. 31, at 2-3.) As stated above, plaintiff may only pursue his claim under the VEOA and the CSRA. (See supra, at 7-8.) Therefore, it is irrelevant that he now argues that his complaint as alleging Fifth Amendment claims. Furthermore, even if constitutional claims were allowed under these facts, the plain language of the complaint indicates that he was making VEOA and CSRA claims, and a complaint may not be amended through subsequent briefing. Frederico v. Home Depot, 507 F.3d 188, 201-202 (3d Cir. 2007).

Plaintiff next attempts to distinguish some of the case law Judge Blewitt relies on in recommending dismissal of his case. (Doc. No. 31, 5-10.) Plaintiff first attempts to distinguish Elgin v. Department of the Treasury on the grounds that the petitioners in that case failed to register for the selective service. (Doc. No. 31, at 5-6; Elgin v. Dept. of Treasury, 132 S.Ct. 2126 (2012)). He also attempts to distinguish Ruddy v. U.S., arguing that those plaintiffs were suing for harassment while he is suing for denial of access to the law. (Doc. No. 31, at 6; Ruddy v. U.S., 11-CV-1100, 2011 WL 5834953 (M.D.Pa. 2011)). These distinctions miss the point intended because Judge Blewitt relied on these cases for the proposition that the Federal Circuit maintains exclusive jurisdiction over appeals pursuant to the CSRA. (Doc. No. 30, at 27-28.) Plaintiff also attempts tp distinguish Carducci v. Regan, Sarullo v. U.S. Postal Service, and Bush v. Lucas. (Doc. No. 31, at 7-8; Carducci v. Regan, 714 F.2d 171 (D.C.C. 1983); Sarullo v. U.S. Postal Service, 352 F.3d

789 (3d Cir. 2003); Bush v. Lucas, 462 U.S. 367 (1983)). He points out that the Carducci case involved a due process violation while his case does not. (Doc. No. 31, at 7.) He next notes, "the only parallels with the instant case are [Sarullo's] claims that the action taken against him is not covered by the CSRA, and a botched investigation." (Doc. No. 31, at 7.) Finally, he explains that the Bush case involved a First Amendment claim while plaintiff is claiming "he was denied fair and timely access to the law." (Doc. No. 31, at 8.) Each of these distinctions is immaterial in this case. Judge Blewitt relied on these cases for the proposition that the CSRA removed jurisdiction from the federal courts to hear federal employment cases and that the CSRA precludes Bivens claims with respect to federal employment. (Doc. No. 30, at 26-27, 40-41.) The broad principles for which Judge Blewitt cited these cases are unchanged by the factual distinctions plaintiff points out.

Next, plaintiff argues that Judge Blewitt incorrectly concluded, "the government in no way induced the plaintiff to rely on the results of the investigation." (Doc. No. 31, at 10.) He argues that defendants had a "legal obligation" to inform him that he should not rely on and wait for the agency's investigation to conclude before filing a complaint. (Doc. No. 31, at 10.) Judge Blewitt addressed this issue in the context of equitable tolling, (Doc. No. 30, at 30-38), which applies only "where the defendant has *actively* misled the plaintiff respecting the plaintiff's cause of action [or] . . . where the plaintiff in

12

some *extraordinary way* has been prevented from asserting his or her rights." Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997). Plaintiff does not allege that he was actively misled by a government official nor can the court find any legal precedent indicating that the Office of Special Counsel owed plaintiff an affirmative duty to warn him that he could file a complaint independently of the investigation. Regardless, this court does not have subject matter jurisdiction in the first place, so equitable tolling will not save plaintiff's complaint here.

Finally, plaintiff appears to argue that Judge Blewitt improperly ignored the merits of his claim in recommending its dismissal. (Doc. No. 31, at 12-14.) Plaintiff is correct that the Judge recommended dismissal on jurisdictional grounds rather than substantive grounds. Although the court recognizes the importance of plaintiff's substantive claims, the court cannot exercise jurisdiction over a case when Congress has vested original jurisdiction with an administrative agency and exclusive jurisdiction over appeals with another court. Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005). Congress has created a comprehensive administrative scheme for handling claims relating to federal employment and veterans preferences, and this court may not disregard them simply to achieve an allegedly just result. Plaintiff has failed to exhaust those remedies, and the court may not waive jurisdictional objections to hear substantive claims, regardless of merit.

13

As alternative relief, plaintiff urges the court to allow him to amend his complaint. (Doc. No. 22.) Judge Blewitt recommended that the complaint be dismissed with prejudice because plaintiff must first pursue administrative remedies and because the Federal Circuit is the exclusive jurisdiction for appealing CSRA and VEOA claims. Elgin v. Dept. of the Treasury, 132 S.Ct. 2126, 2132-33 (2012) (CSRA); 28 U.S.C. §1295 (VEOA); Shell Oil Co. v. U.S. 672 F.3d 1283, 1288 (Fed. Cir. 2012) (VEOA). While leave to amend should normally be freely given, a court may deny a such a motion when amendment would be futile. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). In this case, the Federal Circuit is the court with exclusive jurisdiction over plaintiff's claims. (See supra, at 10.) Furthermore, the motion for leave to amend indicates that plaintiff intends to re-file his claims under 42 U.S.C. §1983. (Doc. No. 3, at 1.) Section 1983, however, only provides relief for violations of federal law by state employees, not federal employees as here. Dennis v. Jensen, 10-CV-1486, 2013 WL 2245144, *8 (M.D.Pa. 2013). Therefore, amendment would be futile and the court will **DENY** plaintiff's motion for leave to amend his complaint. (Doc. No. 11.)

## **CONCLUSION**

In order to properly pursue his claims, plaintiff must exhaust his administrative remedies and then appeal his case to the United States Court of Appeals for the Federal Circuit. As such, this court lacks subject matter

14

jurisdiction over plaintiff's claims. Therefore, the court will **ADOPT** the thorough and comprehensive report and recommendation, (Doc. No. 30), **IN ITS ENTIRETY**, and the complaint, (Doc. No. 1), will be **DISMISSED WITH PREJUDICE**. Because amendment would be futile, the court will **DENY** plaintiff's motion for leave to file an amended complaint. (Doc. No. 22.) The clerk of court is directed to **CLOSE** the case.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE:** June 12, 2013

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-491-01.wpd